**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WILLIAM R. DISHMAN,**

**Petitioner,**

**vs.**                                                     **Case No. 4:12cv485-WS/CAS**

**JULIE L. JONES, Secretary,
Florida Department of Corrections,[1]**

**Respondent.**

_____/

**REPORT AND RECOMMENDATION TO DENY AMENDED § 2254 PETITION**

On September 12, 2012, Petitioner William R. Dishman, proceeding pro se, filed

a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  On July 2,

2013, Respondent filed an answer.  Doc. 10.  Respondent also filed exhibits.  Doc. 11.

Petitioner filed a reply on July 18, 2013.  Doc. 14.  Petitioner subsequently filed an

amended § 2254 petition.  Doc. 19.  Respondent filed an answer to the amended

petition.  Doc. 20.  Petitioner has not filed a reply thereto, although given an opportunity

to do so.  *See* Doc. 18; *see also* Doc. 21.

_____

[1]The Clerk of Court shall substitute Julie L. Jones as Secretary of the Florida
Department of Corrections in place of Michael D. Crews.  Julie Jones became Secretary
on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of
Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied.

## State Court Proceedings

By amended information filed June 22, 2007, in the Second Judicial Circuit, Leon County, in case number 07-CF-397, the State of Florida charged Petitioner William R. Dishman with four counts in connection with events that took place on January 29, 2007, and involving victim Thalia Witherspoon: (1) attempted first degree murder, a life felony, in violation of section 784.045(1)(a)1., Florida Statutes; (2) false imprisonment, a third degree felony, in violation of section 787.02(1)(a), Florida Statutes; (3) grand theft of a motor vehicle, a third degree felony, in violation of section 812.014(2)(c)6., Florida Statutes; and (4) criminal mischief, a first degree misdemeanor, in violation of section 806.13(1)(b)2., Florida Statutes.  Doc. 11 Ex. A at 2; *see id.* at 1 (original information, filed February 27, 2007).

Dishman proceeded to a jury trial on all four counts on September 18, 2007.  *Id.* Exs. B, C (trial transcript).  The victim testified at trial, as well as several other witnesses.  *Id.* Ex. B at 2-3, Ex. C at 103-04.  Dishman testified in his defense.  *Id.* Ex. C at 144-78.  The jury found Dishman guilty of the lesser included offense of aggravated

battery with a deadly weapon, on Count 1; not guilty of false imprisonment, on Count 2;

guilty as charged of grand theft of a motor vehicle, on Count 3; and guilty as charged of

criminal mischief, on Count 4.  *Id.* at 231-33, Ex. A at 75-78.  The judge adjudicated him

guilty and sentenced him to fifteen (15) years in prison on Count 1, five (5) years in

prison on Count 3, to run consecutive, and time served in jail on Count 4.  *Id.* Ex. C at

252, Ex. A at 82-92.

Dishman appealed his judgment and sentence to the First District Court of

Appeal (DCA), assigned case number 1D07-5126.  Doc. 11 Ex. H.  Dishman raised

three points on appeal:

> (1) Whether the trial court erred in admitting extensive evidence of a
> collateral crime such that its probative value was substantially outweighed
> by its unfairly prejudicial effect.

> (2) Whether the trial court erred in permitting collateral evidence to be
> made a feature of the trial in this cause.

> (3) Whether the trial court erred by improperly commenting on the jury's
> verdict and imposing a sentence based upon facts not found by the jury.

*Id.* Ex. H at 2-3.  The State filed an answer brief.  *Id.* Ex. I.  Dishman did not file a reply

brief.  *See* online docket for 1D07-5126 at www.1dca.org.  On July 30, 2009, the First

DCA affirmed the case without an opinion.  Doc. 11 Ex. J; Dishman v. State, 13 So. 3d

470 (Fla. 1st DCA 2009) (table).  The mandate issued August 17, 2009.  Doc. 11 Ex. J.

On March 8, 2010, Dishman filed a state petition alleging ineffective assistance

of appellate counsel.  Doc. 11 Ex. K.  On March 30, 2010, the First DCA denied the

petition on the merits, in a one-sentence opinion.  *Id.* Ex. L; Dishman v. State, 31 So. 3d

908 (Fla. 1st DCA 2010).

On August 10, 2010, Dishman, proceeding pro se, filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising five grounds, including four claims of ineffective assistance of trial counsel. Doc. 11 Ex. M at 1-23. The State filed a response, indicating the matter should be set for an evidentiary hearing. *Id.* at 29. An evidentiary hearing took place on August 12, 2011, during which Dishman was represented by privately-retained counsel. *Id.* at 34-103 (transcript). At the conclusion of the hearing, the court found Dishman had not met his burden, defense trial counsel was not "ineffective in any way," and the Rule 3.850 motion would be denied. *Id.* at 101. In an order rendered October 17, 2011, the court denied the Rule 3.850 motion "[f]or the reasons stated on the record." *Id.* at 104.

Dishman appealed the denial of his Rule 3.850 motion to the First DCA, assigned case number 1D11-4900. *Id.* Exs. M, N. Dishman, proceeding pro se, filed an initial brief raising five points, *id.* Ex. O, and the State filed a notice that it would not file an answer brief, *id.* Ex. P. The First DCA affirmed the case per curiam without a written opinion on April 30, 2012. *Id.* Ex. Q; Dishman v. State, 90 So. 3d 376 (Fla. 1st DCA 2012) (table). Dishman sought rehearing; the court denied his motion by order issued May 24, 2012. Doc. 11 Ex. R. The mandate issued July 6, 2012. *Id.* Ex. S.

As indicated above, on September 12, 2012, Dishman filed a § 2254 petition in this Court. Doc. 1. After Respondent filed an answer, Doc. 10, Petitioner filed an amended § 2254 petition, Doc. 19. In his amended § 2254 petition, Dishman raises seven grounds, including three claims of ineffective assistance of counsel (IAC):

(1) Trial Court Error – Admission of Collateral Evidence:  "The state court in violation of the federal due process clause of the Fourteenth Amendment of the United States Constitution in the per curiam affirmed order failed to rule on the due process violation as the state court erred in admitting extensive collateral evidence when its probative value was substantially outweighed by its prejudice effect."  Doc. 19 at 5.

(2) Trial Court Error – Allowing Collateral Evidence to Become Feature of Trial: "Petitioner was denied the federal fundamental due process rights to a fair trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution in the per curiam affirmed order on direct appeal as the stated erred of the state court's abuse its discretion when it permitted collateral evidence to be made feature of the trial."  *Id.* at 7.

(3) Trial Court Error – Imposition of Sentence: "The state court in violation of the federal due process clause of the Fourteenth Amendment of the United States Constitution in the per curiam affirmed order failed to rule on the due process violation as the state court erred during sentencing by improperly commenting on the jury's verdict and imposing a sentence based upon facts not found by the jury."  *Id.* at 9.

(4) IAC – Failure to Investigate and Obtain Expert Witness: "Petitioner was denied the federal fundamental right to due process of law in the per curiam affirmed order in the post conviction motion 3.850 that failed to discuss in the state court the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution violation of the right to effective assistance of counsel contrary to federal constitution for failure to investigate and failure to obtain medical expert to testify after Petitioner request counsel to do so."  *Id.* at 12.

(5) IAC – Failure to Object to Deadly Weapon Theory:  "Petitioner in state court proceeding in the per curiam affirmed order violated federal due process of law notably neither of the state appellate decision analyzed the federal constitutional Sixth and Fourteenth Amendments of the United States Constitution ineffective assistance of counsel and due process of law failed to object to deadly weapon theory of aggravated battery with a deadly weapon as a lesser included offense this failure violated the Petitioner's Sixth and Fourteenth Amendment to the United States Constitution."  *Id.* at 11-12.

(6) IAC – Failure to File Motion to Reduce Charges: "The state court violated Petitioner's Sixth and Fourteenth Amendment of the United States Constitution right to effective assistance of counsel and due process of

law in post conviction motion 3.850 proceeding in the per curiam affirmed decision of the state courts failed to analyzed or discussed the federal constitutional issue of the Sixth Amendment violation of counsel failed to filing a motion to reduce charges."  *Id.* at 17.

(7) Fundamental Error – The information fails to name Petitioner and thus he was never charged.  *Id.* at 20.

Respondent filed an answer to the amended petition.  Doc. 20.  Petitioner has not filed a reply thereto, although given an opportunity to do so.  *See* Doc. 18; *see also* Doc. 21.

<u>**Analysis**</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1388.

Also relevant here, in Strickland v. Washington, the U.S. Supreme Court adopted a two-part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  Id. at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state court's

determination' under the <u>Strickland</u> standard 'was incorrect but whether that

determination was unreasonable – a substantially higher threshold.'" <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473

(2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim

evaluated under the § 2254(d)(1) standard." *Id.*

### <u>Ground 1</u>: Trial Court Error – Admission of Collateral Evidence

In his first ground, Petitioner Dishman asserts the First DCA "violated federal due

process by issuing a decision without opinion" when the court per curiam affirmed his

direct appeal. Doc. 19 at 5. Petitioner further asserts that the state trial court erred in

allowing the prosecution "to introduce collateral evidence in the Petitioner's trial when

the probative value of the evidence was substantially outweighed its unfair prejudice

effect." *Id.*

As Respondent indicates, to the extent this ground seeks relief only because the

First DCA per curiam affirmed Dishman's direct appeal, without a written opinion, this

ground does not state a federal claim. A state court is not required to give reasons for

its decision to constitute an adjudication on the merits for AEDPA purposes. *See, e.g.*,

<u>Harrington</u>, 131 S. Ct. at 785. Further, as Respondent also indicates, even assuming

this ground does state a federal claim, Dishman did not exhaust it because he did not

file a motion for rehearing in the First DCA requesting a written opinion.  This ground is

procedurally defaulted because Dishman cannot obtain another direct appeal.

To the extent this ground actually challenges the state trial court's admission of

collateral evidence, the ground was not exhausted as a federal claim.  In particular, no

mention of any federal law was made during a pretrial hearing on the defense motion in

limine, in the motion itself, or in the point raised on appeal challenging the admission of

the evidence.  Specifically, the defense moved in limine to prevent the State from

introducing testimony about an altercation between Dishman and the victim on January

27, 2007, two days prior to the date of the charged offenses.  Doc. 11 Ex. A at 40-41.

This motion cites no federal law; indeed, the motion cites no authority.  *Id*.  The hearing

on the motion occurred just before the trial began.  *Id*. Ex. B at 4-8.  Defense counsel

explained she had filed the motion seeking "to limit the State's ability to introduce any of

that evidence on two grounds; one is that there has been no notice on Williams so I

don't believe that she is attempting to use it as Williams rule evidence, but the second

reason is because the prejudice to the defendant far outweighs any relevancy."  *Id*. at 4.

(Under Florida law, similar fact evidence of other crimes, called <u>Williams</u> Rule evidence,

"is admissible when relevant to prove a material fact in issue," such as motive, intent,

preparation, or plan.  Fla. Stat. § 90.404(2)(a); <u>Williams v. State</u>, 110 So. 2d 654 (Fla.

1959); <u>Lamontagne v. Sec'y, Dep't of Corr.</u>, 433 F. App'x 746, 749 (11th Cir. 2011).)

Defense counsel further argued that, assuming the prosecution was planning to assert

"that it is inextricably intertwined with the events of January 29th such that she need it to

explain the events of January 29th, I'm going to ask the Court not – I know the case law

and I have ample case law – to make it a feature of this trial." Id. at 5.  The prosecutor

responded:

> Your Honor, I completely agree that it should not be a feature of the
> trial.  I have read and have the case law here and laid out to present to the
> Court and defense, but this is relevant evidence.  It goes to the heart of
> what happened on Monday, the 29th.  He come over, his statement in
> relation to threatening to kill the victim was all about what happened on
> the 27th and what happened on the 25th.
>
> The beginning of this course of conduct started on Thursday the
> 25th.  There was an altercation, they broke up, he moved out.  He came
> back on Saturday the 27th, he beat her, she called the cops.  He come
> back on Monday the 29th, he attempted to kill her.  There is no way to
> explain what happened on Monday the 29th without explaining what
> happened on Thursday the 25th and Saturday the 27th.  All three of these
> events are linked, it is one course of conduct.  It is inextricably intertwined.

Id. at 5-6.  No specific case law or authority was mentioned.  Id. at 4-6.  The trial judge

denied the motion in limine, finding the events inextricably intertwined.  Id. at 6.

As indicated above, on direct appeal, Dishman raised, as his first point, "Whether

the trial court erred in admitting extensive evidence of a collateral crime such that its

probative value was substantially outweighed by its unfairly prejudicial effect."  Doc. 11

Ex. H at 2.  In support, the brief cites only state case law and section 90.403, Florida

Statutes.  Id. at 23-25.  Similarly, in response to Dishman's argument, the State's

Answer Brief cites only state law.  Doc. 11 Ex. I at 11-14.  Because Dishman did not

alert the state courts to the federal ground he now asserts, this ground was not fairly

presented as a federal claim and is unexhausted.  It is procedurally defaulted because

Dishman cannot obtain another direct appeal.  Dishman has not alleged or shown

cause for the default and actual prejudice, nor has he alleged or shown actual

innocence or a fundamental miscarriage of justice.

Even assuming this ground is exhausted as a federal claim challenging the state

trial court's admission of collateral evidence, it does not warrant habeas relief.  This

ground alleges a claim of state law error, specifically a state trial court evidentiary ruling.

"[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497

U.S. 764, 780 (1990); *see* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining

that errors that do not infringe on defendant's constitutional rights provide no basis for

federal habeas corpus relief).  "A state's interpretation of its own laws or rules provides

no basis for federal habeas corpus relief, since no question of a constitutional nature is

involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*,

McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).  "Indeed, the general rule

is that a federal court will not review a trial court's actions with respect to the admission

of evidence." Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983).  "A state evidentiary

violation in and of itself does not support habeas corpus relief" and "[b]efore such relief

may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'"

*Id.*; *see* Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We review state

court evidentiary rulings on a petition for habeas corpus to determine only 'whether the

error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . .

Erroneously admitted evidence deprives a defendant of fundamental fairness only if it

was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations

omitted)); Link v. Tucker, 870 F. Supp. 2d 1309, 1324-30 (N.D. Fla. 2012) (district court

order adopting magistrate judge's report and recommendation to deny § 2254 petition

alleging, among other things, state trial court abused its discretion by admitting

evidence of petitioner's prior conduct).

A review of the record reflects that admission of the challenged evidence in this

case does not appear erroneous under Florida state law.  *See* Doc. 26 Ex. J at 10-13;

§ 90.404(2)(a), Fla. Stat. (2005); s*ee, e.g.*, <u>Durousseau v. State</u>, 55 So. 3d 543, 552

(Fla. 2010) ("[W]e hold that the collateral crime evidence did exhibit unique similarities

that established a modus operandi sufficient for proving identity.  Pursuant to section

90.404(2)(a), evidence of other crimes, acts or wrongs is admissible to prove identity.");

<u>Buenoano v. State</u>, 527 So. 2d 194, 197 (Fla. 1988) ("Under the <u>Williams</u> rule evidence

of other crimes, wrongs and acts is admissible if it is relevant to and probative of a

material issue even though the evidence may indicate the accused has committed other

uncharged crimes or may otherwise reflect adversely upon the accused's character.

Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in <u>Williams v. State</u>

and lists the purposes for which such evidence is deemed to be admissible: proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake

or accident.").  Moreover, even if erroneous, such admission did not deprive Dishman of

a fundamentally fair trial, as the State presented far more powerful evidence of his guilt,

including testimony of the victim and other witnesses about events that occurred on

January 29, 2007, which gave rise to the crimes charged.

Finally, Dishman has pointed to no U.S. Supreme Court precedent holding that

the admission of this type of collateral evidence in these circumstances violates the

federal constitutional guarantee of due process and a fair trial.  *See* Link, 870 F. Supp. 2d at 1328-29.  Therefore, he has not shown the state court's rejection of his claim, assuming it was fairly presented, was contrary to or an unreasonable application of clearly established federal law either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2: Trial Court Error – Allowing Collateral Evidence to Become Feature of Trial

In his second ground, Dishman asserts the state trial court allowed the collateral evidence (challenged in Ground 1) to become a feature of the trial.  Doc. 1 at 7-9. Similar to his argument in Ground 1, Dishman challenges the First DCA's per curiam affirmance of his direct appeal without a written opinion:  "Petitioner in violation of the Fifth Amendment of the United States Constitution was denied the right to due process of law due to the State court appeal court *Per Curiam* Affirmed decision without a written opinion on July 30, 2009."  *Id.* at 7.  Dishman further argues the state court denied his federal constitutional rights to a fair trial by denying the defense motion in limine.  *Id.* at 7-8.

As explained in the analysis of Ground 1, *supra*, to the extent this ground seeks relief only because the First DCA per curiam affirmed Dishman's direct appeal, without a written opinion, this ground does not state a federal claim.  A state court is not required to give reasons for its decision to constitute an adjudication on the merits for

AEDPA purposes.  *See, e.g.*, Harrington, 131 S. Ct. at 785.  Further, even assuming

this ground does state a federal claim, Dishman did not exhaust it because he did not

file a motion for rehearing in the First DCA requesting a written opinion.  This ground is

procedurally defaulted because Dishman cannot obtain another direct appeal.

Further, similar to the analysis of Ground 1, *supra*, to the extent this ground

argues the state trial court erred in allegedly allowing the collateral evidence to become

a feature of the trial, the ground was not exhausted as a federal claim.  In particular, no

mention of any federal law was made during a pretrial hearing on the defense motion in

limine, in the motion itself, or in the point raised on appeal challenging the admission of

the evidence.  Specifically, after the state trial court denied the defense motion in limine,

the following transpired:

> MS. HOBBS [defense counsel]: Your Honor, I accept the Court's ruling.
> The next prong of that is that she not make it a feature.  I mean –
>
> THE COURT: Well that can only await her presentation.  And if she makes
> it brief and short and you cross-examine for a day and you make it a
> feature, then that's a different problem.  So we just have to await that
> outcome.  But she knows the rule there so I expect her to honor it.
>
> MS. HOBBS: Is the Court going to allow or not allow in opening the State
> to get into –
>
> THE COURT: She can go – she can address it the way she wants to.  As I
> said, if it turns out that it was in error in retrospect after I've seen the
> evidence and say, well, no, you did not see it correctly or you
> misinterpreted it, then I can readdress the whole thing.  And if it is grounds
> for a mistrial, then that's what we will look at, and I'll handle it.
>
> But right now I'm confident she will do whatever she thinks is best.
> And if it is in error, I'll find so later. And if it is not, then it will be fine.
> Okay?

MS. HOBBS: Yes, ma'am.

THE COURT: Any other motions?

MS. HOBBS: Your Honor, let me just say this, I'm not going to get up in the middle of her opening and object. So I just want to object to the introduction of this evidence to preserve the record during the opening. And I will do another objection during trial, but –

THE COURT: Yeah, I would deny it during opening anyway since you can't tell any error until after the evidence is in and we haven't reached the evidence phase. So you don't need to object during opening.

MS. THOMAS [prosecutor]: Your Honor, I would just put on the record for Ms. Hobbs' whatever, I told the victim not to bring her son and the other juvenile who was subpoenaed to the trial because after reading the case law I realized what I could and could not do. And to not make it a feature, they are not coming, just so you know.

THE COURT: Okay.

Doc. 11 Ex. B at 7-8.

As indicated above, on direct appeal, Dishman raised, as his second point, "Whether the trial court erred in permitting collateral evidence to be made a feature of the trial in this cause." Doc. 11 Ex. H at 2. In support, the brief cites only Florida case law. *Id.* at 26-32. Similarly, in response to Dishman's argument, the State's Answer Brief cites only state law. Doc. 11 Ex. I at 14-15. Because Dishman did not alert the state courts to the federal ground he now asserts, this ground was not fairly presented as a federal claim and is unexhausted. It is procedurally defaulted because Dishman cannot obtain another direct appeal. Dishman has not alleged or shown cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.

Even assuming this ground is exhausted as a federal claim challenging the state trial court's alleged error in allowing collateral evidence to become a feature of the trial, it does not warrant habeas relief.  As with Ground 1, this ground alleges a claim of state law error, specifically a state trial court evidentiary ruling.  "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis, 497 U.S. at 780; *see* Estelle, 502 U.S. at 67-68.  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales, 699 F.2d at 1055; *accord, e.g.*, McCullough, 967 F.2d at 535.  "Indeed, the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence."  Shaw, 695 F.2d at 530.  "A state evidentiary violation in and of itself does not support habeas corpus relief" and "[b]efore such relief may be granted, the violation must rise to the level of a denial of 'fundamental fairness.'" *Id*.; *see* Jacobs, 952 F.2d at 1296 ("We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.' . . . Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction." (citations omitted)); Link, 870 F. Supp. 2d at 1324-30 (district court order adopting magistrate judge's report and recommendation to deny § 2254 petition alleging, among other things, state trial court abused its discretion by admitting evidence of petitioner's prior conduct).

A review of the record reflects that the collateral evidence did not become a feature of the trial or deprive Dishman of fundamental fairness.  *See, e.g.,* Doc. 11 Ex. B

at 53-76 (trial testimony of victim); Ex. C at 188-98, 206-08 (State's closing and rebuttal arguments).  Dishman has not shown the state court's rejection of his claim, assuming it was fairly presented, was contrary to or an unreasonable application of clearly established federal law either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 3: Trial Court Error – Imposition of Sentence

In his third ground, Dishman asserts the state trial court erred during sentencing by commenting on the jury's verdict and imposing a sentence based on facts not found by the jury.  Doc. 19 at 9-11.  As with his arguments in Grounds 1 and 2, Dishman challenges the First DCA's affirmance of his direct appeal without a written opinion: "The State appellate court's *Per Curiam* Affirmed decision neither analyzed or discussed the Petitioner's Federal Constitutional issue of the due process right to a fair sentence, as Petitioner believe that the State courts erred when considering charging for which the jury acquitted Petitioner."  *Id.* at 10.

As explained in the analysis of Grounds 1 and 2, *supra*, to the extent this ground seeks relief only because the First DCA affirmed Dishman's direct appeal without a written opinion, this ground does not state a federal claim.  A state court is not required to give reasons for its decision to constitute an adjudication on the merits for AEDPA purposes.  *See, e.g.*, Harrington, 131 S. Ct. at 785.  Further, even assuming this ground does state a federal claim, Dishman did not exhaust it because he did not file a motion

for rehearing in the First DCA requesting a written opinion.  This ground is procedurally

defaulted because Dishman cannot obtain another direct appeal.

Further, to the extent this ground argues the state trial court impermissibly

considered conduct for which the jury acquitted Dishman, it lacks merit and should be

denied.  Defense counsel did not object at the time of sentencing.  Doc. 11 Ex. C at

252-55.  In imposing the sentence, the trial judge made the following statements:

> Well, of course, I sat through the entire trial, I listened carefully to everybody.  I'm going to announce my sentence and then I'll take a moment to explain it.
>
> On Count 4, which is the criminal mischief, I'll sentence him to 230 days Leon County Jail, with credit for 230 days time served and close out that count.
>
> Consecutive to that, I will sentence him on Count 3, to five years Department of Corrections.  He will have no credit on that because all that credit went on Count 4.
>
> As to Count 2, of course, he was found not guilty so there was nothing on that.
>
> And then as to Count 1, aggravated battery with a deadly weapon, I will sentence him to a consecutive 15 years to Count 3, and that's adjudication of guilty with zero credit.
>
> Now, these cases are very hard because there is not only a victim that's named in the charging document, but there are victims that are family members that are so terribly hurt when these kinds of situations arise.
>
> I will state for the record that I'm not considering any NCIC or history.  This is solely based on this case.  And I respect the jury's decision in this.  This is not a life sentence.  <u>He wasn't convicted of attempted murder.  But what I do believe the evidence supported fully was that he made those threats, she surely believed it, and there was so much evidence to point in that direction</u>.

I can easily see why the jury had a reasonable doubt about what he ultimately intended and that maybe he started off with that intention, but did abandon it and didn't intend to carry through.  But, regardless, the evidence supports wholeheartedly that through an extended period of time this victim was terrorized.  She believed she was going to be killed.  She was hit numerous times with a bat.  Her home was devastated by hits to the wall, the terror, the window knocked out, the numerous holes in the wall.  I think he went on a rampage.  And he may have in the end got it under control, and that's to his credit, but the verdict reflects that.

But what happened in this case was so serious and it was volatile at that time.  I have – I do not really seriously question that he may be a good brother or a good son to those people that he loves that are in his immediate family.  The problem is that in this relationship, it wasn't that way.  And he went down this path and he made those choices.  And it is sad.  And he put it very aptly that a moment or two can change your life.  And he is right about that.

I have a responsibility not just to punish but to protect the community.  And the community is other girlfriends, other women, anybody that he would have a similar relationship with and couldn't handle it.  I have a responsibility to protect the community.  And I think this goes a way to do it.

I would also add that this extended over a long enough period of time that Mr. Dishman had plenty of time to put down that bat, reassure her that he was sorry, and while there would be damage to pay for still what there was, there was enough time to mitigate even an explosive moment.  But she ran out of that house screaming for her life.  And the physical evidence supports all that; running out in the cold, losing her shoes, running and jumping into a stranger's car, anything to escape.  And her testimony makes sense.  It wasn't merely the ranting of an hysterical, delusional woman.

Now does this mean that she might not have played some role in the past to arguments and fighting and all that stuff?  I pass no judgment on that.  What I heard about is what happened on January 29th.  And I also saw, of course, the damage that the evidence supported, that he admitted committing, to her.

And it is incredible that he would go to that home, his version is that to make up.  But yet how could he look at that woman with that huge black eye and think that she would not be terrified of him, that she would be

interested in making up with him and that when she told him to get out, she meant it.  And he should have respected that, regardless.  And he didn't.  And what followed, followed.

So that's the reasoning of the Court.  This was an extremely serious situation, that <u>Mr. Dishman is lucky.  The jury could have been fully within their legal bounds to find him guilty of attempted murder because of the statements</u>.  But I do think they reached in – sometimes people boast or state intent that they really don't mean to carry through.  And I would guess that they found reasonable doubt about what his true intent was as opposed to what he was saying.  And I respect that very much.  And the defense counsel made a good argument on that.  So I have no problem with that.

But had he been convicted of something like that, then he would be looking at – he would be looking at the maximum on that.  So the jury gave him – gave him the benefit there.

All right, that's the end.  Thank you.

*Id*. (emphasis added).

Dishman's counsel subsequently filed a Rule 3.800(b)(2) motion to correct

sentence, quoting the above emphasized language and asserting the sentence violated

the U.S. Constitution because the court considered the charge of attempted murder.

Doc. 11 Ex. D.  Specifically, the motion includes the following arguments:

11.  The Defendant believes that the sentence imposed upon him by this Court is illegal because the Court considered charges for which the jury acquitted the Defendant, to wit, attempted murder in sentencing the Defendant to the maximum amount of time allowable under the law.  This Court's impermissible consideration of charges for which the Defendant was acquitted by the jury is a violation of the Defendant's due process right and Double Jeopardy clauses of Florida Constitution.  <u>Brown v. State</u>, 763 So. 2d 1190 (4DCA2000).

12.  The Defendant believes that although the Court commented that it respected the jury verdict, the Court's comments regarding the existence of evidence that would have supported the attempted murder illustrates that the Court did consider the charge of attempted murder in sentencing

the Defendant.  This impermissible consideration has been condemned by the United States Supreme Court in <u>Townsend v. Burke</u>, 334 US 736 (1948) and by Florida Courts in <u>Brown v. State</u>, 763 So. 2d 1190 (4DCA2000).  See also, <u>State v. Overfelt</u>, 457 So. 1385 (Fla. 1984)

13.  The Defendant believes that the sentence impose violates the US Constitution and the Florida Constitution and is therefore illegal and should be set aside and the Defendant resentence.

*Id.* at 118-19.

In an order rendered March 3, 2008, the state trial court denied the Rule 3.800 motion.  Doc. 11 Ex. D at 120-21.  The order includes the following findings:

It is clear from the portions of the record cited in the motion that, while the Court did express an opinion about whether the evidence presented <u>could</u> have supported a verdict for Attempted First-Degree Murder, she respected the jury's verdict and had no reservations about imposing an appropriate sentence, noting that Defendant could have received a life sentence if convicted as charged.  The statement that "[w]hat I do believe the evidence supported fully was that he made those threats, she surely believed it, and there was so much evidence to point in that direction" does not mean the Court thought Defendant was guilty of Attempted Murder.  The Court went on to give an explanation as to how the jury most likely concluded that Defendant was guilty of the lesser-included offense; specifically, that they could have found the victim honestly believed Defendant's threats that he was going to kill her, but that Defendant was merely boasting or scaring her while not possessing the requisite intent for Attempted Murder.  The fact that threats were made was relevant to the jury's finding that a deadly weapon was used during the crime.  None of these comments indicate that the Court actually considered that Defendant was guilty of Attempted Murder, especially in light of not one but two separate remarks regarding her respect for the jury's consideration of the facts and their verdict.

*Id.*

As indicated above, on direct appeal, Dishman raised, as his third point, "Whether the trial court erred by improperly commenting on the jury's verdict and imposing a sentence based upon facts not found by the jury."  Doc. 11 Ex. H at 3.  In

support, the brief cites the same cases cited in the Rule 3.800 motion: <u>Townsend v. Burke</u>, 334 U.S. 736 (1948), <u>State v. Overfelt</u>, 457 So. 2d 1385 (Fla. 1984), and <u>Brown v. State</u>, 763 So. 2d 1190 (Fla. 4th DCA 2000).  Doc. 11 Ex. H at 33-36.  The state trial court's rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and are supported by the record.  *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 131 S.Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the state court's findings in denying the Rule 3.800 motion, as set forth above.  As the court indicated, the sentencing judge twice stated she respected the jury's verdict.  The case law cited by Dishman does not require a different result.  *Cf.* <u>Townsend</u>, 334 U.S. at 740-41 ("We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record.").

Based on the foregoing, Dishman has not shown entitlement to federal habeas relief.  Dishman has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 4</u>: IAC – Failure to Investigate and Obtain Expert Witness

In his fourth ground, Dishman asserts counsel rendered ineffective assistance by not investigating his case and not obtaining a medical expert to testify after he asked

counsel to do so.  Doc. 19 at 12.  Dishman asserts no other supporting facts.  *See id.* at

12-14.

As Respondent indicates, Dishman raised this claim as the first ground in his

Rule 3.850 motion.  Doc. 11 Ex. M at 3-9; *see* Doc. 20 at 16.  There, Dishman recited

as supporting facts the charges against him as well as the evidence introduced by the

State at trial regarding injuries the victim sustained on January 27, 2007, including trial

testimony from Detective Melinda McBride.  Doc. 11 Ex. M at 3-7.  Dishman then stated:

> Obviously Ms. Hobbs believed it was important to present
> testimony concerning the nature of the injuries sustained by the victim,
> and the manner in which the baseball bat was used by the Defendant.
> Counselor repeatedly questioned Detective McBride concerning the
> velocity of the bat and the extent of the injuries; although the officer was a
> witness for the prosecutor with no knowledge of the force required to
> break bones or skin.  Detective McBride was not a witness that a
> professional attorney would rely on to elicit favorable testimony concerning
> the extent of the injuries or force used by the Defendant to inflict the
> injuries.  This is were [sic] the doctor who examined Ms. Witherspoon
> injuries, should have been brought in to explain, the velocity it takes to
> cause great bodily harm.  This witness was available and would have
> testified that the injuries sustained was inconsistent with great bodily
> harm.  However this testimony was never given, because this witness was
> never called upon by defense counselor, as requested by the
> Defendant. . . .
>
> By questioning Detective McBride concerning the extent of Ms.
> Witherspoon injuries and force and velocity of the bat, Ms. Hobbs
> performance fell below that of a reasonable professional attorney.  No
> professional attorney in the same situation would have failed to obtain a
> medical expert to explain to the jury that the bat was not used in a way
> likely to cause death or great bodily harm, which are the essential
> elements of aggravated battery.  The Defendant was prejudiced by Ms.
> Hobbs deficient performance in that the jury most likely relied on Detective
> McBride harmful speculative opinion concerning the extent of injuries and
> potential harm by the baseball bat.  The Defendant was also prejudiced by
> the testimony concerning the pain Ms. Witherspoon allegedly expressed to
> Detective McBride, which the officer would not have given if Ms. Hobbs

had not repeatedly questioned the officer concerning the velocity of the bat.

*Id.* at 7-9.  After an evidentiary hearing, the state post-conviction trial court denied the claim, finding Dishman had not met his burden to show ineffective assistance of counsel, and further finding "Ms. Hobbs did a very competent job representing the defendant on this" and was not "ineffective in any way."  Doc. 11 Ex. M at 105.  On appeal, Dishman filed a pro se brief that included a point challenging the denial of this claim.  *Id.* Ex. O at ii, 4-6.  The First DCA per curiam affirmed the case without an opinion.  *Id.* Ex. Q.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  In particular, during the evidentiary hearing on the Rule 3.850 motion, Dishman's trial counsel, Barbara Hobbs, testified:

> Q  Okay.  At some point prior to going to trial, did you or where you asked by Mr. Dishman to contact a medical witness – expert medical witness regarding injuries or use of force of the bat against the victim?
>
> A  I can tell you that Mr. Dishman had a lot of problems with the alleged injuries that she had.  And that was one of the reasons during the trial I questioned the officer about the injuries.
>
> I did – I don't recall him asking me to get a medical expert.  But he was – he – he didn't think that her injuries were as severe as she claimed they were.  The charge of aggravated battery or of battery with a – aggravated battery with a deadly weapon, I didn't believe because it was allegedly a bat which was a deadly weapon.  And the State theory of the case could have gone either way, either with the bat or with great bodily harm.

So I – I didn't think an expert was necessary.  I thought it was some fact patterns that the jury could conclude her injuries based on the testimony of her physician.

Q Okay.  There were also –

A And – and that was one of my arguments too was – is that, you know, once they described the injuries to the woman, I asked the jury, I mean, does this sound like somebody that got hit by a bat?

Q Okay.  So you brought those issues up in closing arguments?

A Correct.

Q Okay.  Did you ever bring those up upon examination of any of the witnesses?

A Yes.  The officer, the female officer who went out and saw Ms. – the victim the day of the incident.  I asked her, I mean, you've been doing this for a long time.  These little bruises on this woman's body, I mean, look at Mr. Dishman.  He's a big man.  And I think I told her, look at him, he's a big man.  He's a football player.  If he hit her with a bat like she described he hit her with a bat, she would have far more injuries to her than what it is that she ultimately had.  And the witness, she – she agreed.

Q Okay.  And did you – was there an issue that you discussed between Mr. Dishman and yourself regarding which injuries occurred on the first incident [on January 27, 2009,] versus the second incident [on January 29, 2009, which gave rise to the charges for which he went to trial]?

A I'm sure we did.  Yes.

Q Okay.  And did you, in fact, talk to or cross-examine the same witness – we're talking about the detective – regarding which injuries were sustained on, which day?

A Correct.

Q Okay.  So you brought that to the attention of, if I understand you correctly, you brought the attention to both the jurors through the examination of this defendant or this witness that some of the injuries, mainly the ones around the eye and the facial area, occurred on a date

preceding this and not on the date of the incident that they were here for trial –

A Right.  Right.  And I think I filed a motion in limine to try to keep all of that stuff out regarding the first incident.  But I, if I recall correctly, I think the judge denied it and she thought it was a continuing I'm going to kill you kind of thing.

Q Okay.  So you actually tried to keep out all that information about that first injury out completely and totally anyway?

A Right.

Q So hiring an expert that would have been talking about the differences of those injuries would have been contrary to the trial strategy?

A Right.  Because I didn't want the jury to know about the first one.

Q Okay.  All right.  And it's my understanding that Mr. Dishman was actually convicted of aggravated battery with a deadly weapon and not great bodily harm so the severity of those injuries would be relevant toward that charge, correct?

A Correct.  And I think the jury came up with that because I made an argument that if this man wanted to kill this woman, it would have happened.

Q And, obviously, they didn't come back with great bodily harm because there was no proof that there was great bodily harm apparently?

A Right.

Q Would that be consistent with the jury's verdict?

A That's what I thought.  That's how they got down.

Doc. 11 Ex. M at 61-65.  On cross-examination, defense counsel further testified:

Q And, once those pictures [of the victim] came into evidence, you said you didn't – one reason you didn't seek out an expert was because you wanted – about those injuries – because you wanted to keep that away from the jury.  But, once those pictures came into evidence, don't you think an expert would have been of assistance to you or at least the doctor

who had treated her for those first injuries in making sure that the jury understood very clearly that those injuries on the face were not caused by the incident that they were before the court on?

A I'm sorry.  I didn't understand that question.  The witness – I want to say the female officer witness was able to testify that many of the injuries that the young lady suffered – she was able to distinguish which ones were the first ones and which ones were the second.  I think that the victim might have done it too.

So those all – there was testimony in the record of the distinction in the two times without the need of an expert.

Now, I didn't think I needed an expert in the case because – and it panned out, because the jury was – they believed me when I told them that it's absurd to think that this man hit her with a bat.  And they, I mean, and tried to kill her with a bat because of his size, his momentum.  He would have killed her.

She didn't have any injuries that were consistent with a bat injury.  And, and the officer who interviewed her the day of the second event, she said it.  She would suspect that there would be more injuries.

*Id.* at 69-70.

The record thus supports the state post-conviction trial court's findings that Dishman did not show ineffective assistance of counsel.  *See, e.g.*, Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (explaining that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").  Dishman has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This

ground should be denied.

### <u>Ground 5</u>: IAC – Failure to Object to Deadly Weapon Theory

In his fifth ground, Dishman asserts defense counsel rendered ineffective

assistance by not objecting to the jury instruction for aggravated battery based on the

use of a deadly weapon and the inclusion of that lesser included offense on the verdict

form.  Doc. 19 at 15.  Again, Dishman has not included supporting facts.  See id. at 15-

17.

As Respondent indicates, Dishman raised this in the second ground in his Rule

3.850 motion.  Doc. 11 Ex. M at 9-12; *see* Doc. 20 at 20.  There, Dishman recited the

following as supporting facts:

> The Defendant was charged in Count I of amended information with
> Attempted First Degree Murder a violation of section 777.04(4)(b) and
> 782.04(1)(a)1, Fla. Stat. and Aggravated Battery with Great Bodily Harm,
> Permanent Disability, Permanent Disfigurement a violation of section
> 784.045(1)(a)1, Fla. Stat.  The amended information alleges a battery
> upon Thalia Witherspoon by striking her with a baseball bat, a deadly
> weapon, intentionally or knowingly causing great bodily harm... but cites
> only the section of the criminal code detailing the great bodily harm
> alternative of aggravated battery.  The prosecutor purposefully omitted the
> section of the criminal code specifying the deadly weapon alternative of
> aggravated battery thus, the Defendant was not properly charged with
> Aggravated Battery with Deadly Weapon. (<u>See</u> Amended Information).
>
> The prosecutor only charged Attempted First Degree Murder and
> Aggravated Battery with great bodily harm.  This is because a baseball bat
> is not a deadly weapon unless used in a way likely to produce death or
> cause great bodily harm.  The prosecutor relied on the Attempted First
> Degree Murder and aggravated battery with great bodily harm theories
> because if the Defendant used the baseball bat in a way likely to produce
> death or great bodily harm he would be guilty of attempted first degree
> murder.  If, however, he used the baseball bat to cause great bodily harm,

but did not intend to kill Ms. Witherspoon, he would be guilty of Aggravated Battery with great bodily harm. But if he did not use the baseball bat in a way likely to produce death and he did not cause great bodily harm, which he unquestionably could have if he intended to, then the baseball bat was not used as a deadly weapon and the Defendant could not be convicted of Aggravated Battery with a deadly weapon.

This explains why Ms. Shelly Thoms, the Assistant State Attorney prosecuting the case acknowledged that defendant could not be convicted on Aggravated Battery with deadly weapon. Ms. Thomas told the jury, "There are going to be – there are lesser included crimes on the verdict form when you get those. But, ladies and gentlemen, this is not an Aggravated Battery with deadly weapon." (T.T. p. 197). She didn't say it was not an Attempted Second Degree Murder. She didn't say it was not an Aggravated Battery with great bodily harm. She announced in open court, "this is not an Aggravated Battery with a deadly weapon." Therefore, there was no material dispute concerning Aggravated Battery with a deadly weapon for the jury to decide.

Ms. Shelly Thomas is the same assistant state attorney who signed the amended information under oath stating her good faith in instituting the prosecution. It was Ms. Thomas who purposefully omitted the section of the Florida Statute specifying aggravated battery with a deadly weapon. As such, the Defendant was not properly charged with the deadly weapon alternative of aggravated battery as previously stated. If, however, the court determines that Ms. Thomas did charge Aggravated Battery with a deadly weapon. Then defendant would assert that the deadly weapon alternative as abandoned when Ms. Thomas declared "This is not an aggravated battery with a deadly weapon." The declaration in open court amounts to a Nol Prosequi as to the Aggravated Battery with a deadly weapon. The trial court, therefore, should not have instructed the jury on the deadly weapon alternative of Aggravated Battery.

Defense counsel was aware that the Defendant did not want any lesser included offenses and she advised the court that the Defendant objected to any jury instructions on lesser included crimes. (T.T. p. 142-143). And although Ms. Thomas asked for the lesser included Aggravated Battery, she did not specifically ask for the deadly weapon alternative of Aggravated Battery. (T.T. p. 141). In fact the trial court did not advise that the deadly weapon instruction would be given when discussing the jury instructions during the charge conference. Nevertheless, defense counsel should have objected to the deadly weapon theory of the aggravated battery instruction when the trial court read the instruction to the jury.

Defense counsel should have moved to strike the deadly weapon
alternative from both the jury instructions and the verdict form.  (T.T. p.
214).

By failing to object to the improper jury instruction and by failing to
move to strike the deadly weapon alternative from both the jury
instructions and the verdict form, Ms. Hobbs' performance fell below that
required of reasonable, professional attorneys.  No competent,
professional attorney in the same situation would have failed to object to
the aggravated battery with deadly weapon alternative.

The Defendant was prejudiced by defense counsel's deficient
performance in that had the jury not been incorrectly instructed the
Defendant would not have been convicted of the lesser offense of
aggravated battery with deadly weapon.

Doc. 11 Ex. M at 9-12.  As indicated in the analysis of Ground 4, *supra*, after an

evidentiary hearing, the state post-conviction trial court found Dishman had not met his

burden to show ineffective assistance of counsel, and further found "Ms. Hobbs did a

very competent job representing the defendant on this" and was not "ineffective in any

way."  *Id.* at 105.  On appeal, Dishman filed a pro se brief that included a point

challenging the denial of this claim.  *Id.* Ex. O at ii, 7-9.  The First DCA affirmed the case

without an opinion.  *Id.* Ex. Q.  These rulings are entitled to AEDPA deference and

review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); Cullen,

131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255.

The record reflects that in the initial information, filed February 27, 2007, the

State of Florida charged Dishman with four counts, including aggravated battery with a

deadly weapon, in the first count:

COUNT I: On January 29, 2007, did unlawfully commit a battery upon
Thalia Y. Witherspoon by with a Baseball bat, a deadly weapon, contrary
to Section 784.045(1)(a)2, Florida Statutes.

Doc. 11 Ex. A at 1.  In the amended information, filed June 22, 2007, the State instead

charged, in the first count, attempted first degree murder:

> COUNT I: On January 29, 2007, did unlawfully attempt to kill a human
> being, Thalia Witherspoon by striking her with a baseball bat, and the
> attempted killing was perpetrated from or with a premeditated design or
> intent to effect the death of Thalia Witherspoon, contrary to Sections
> 777.04(4)(b) and 782.04(1)(a)1, Florida Statutes, and while doing so did
> unlawfully commit a battery upon Thalia Witherspoon by striking her with a
> baseball bat, a deadly weapon, or intentionally or knowingly causing great
> bodily harm, permanent disability, or permanent disfigurement, contrary to
> Section 784.045(1)(a)1.

*Id.* at 2.

Dishman's argument appears to focus on the fact that the statute number for

aggravated battery with a deadly weapon, section 784.045(1)(a)2., was not carried

forward from the initial information to the amended information, which includes the

statute number for aggravated battery causing great bodily harm, section

784.045(1)(a)1.  As quoted above, however, the amended information clearly charges

attempted first degree murder and, as a lesser offense, battery by striking the victim

with a deadly weapon (a baseball bat) or causing great bodily harm, even if it did not

include for that lesser charge cites to both subsections (1)(a)1. and (1)(a)2. of section

784.045.  Doc. 11 Ex. A at 2.  Thus, it appears that even if defense counsel had filed a

pre-trial motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4), the trial

court would have denied the motion and/or allowed the State the opportunity to amend

the information.  *See, e.g.*, State v. Kalogeropolous, 758 So. 2d 110, 111-12 (Fla. 2000)

(explaining that under Rule 3.190(c)(4), "it is the defendant's burden to specifically

allege and swear to the undisputed facts in a motion to dismiss and to demonstrate that

no prima facie case exists upon the facts set forth in detail in the motion" and, to defeat

the motion, "[t]he State need only specifically dispute a material fact alleged by the

defendant or add additional material facts that meet the minimal requirement of a prima

facie case"); Fla. R. Crim. P. 3.140(j) ("An information on which the defendant is to be

tried that charges an offense may be amended on the motion of the prosecuting

attorney or defendant at any time prior to trial because of formal defects."), 3.190(e) ("If

the motion to dismiss is sustained, the court may order that the defendant be held in

custody or admitted to bail for a reasonable specified time pending the filing of a new

indictment or information.).   *See also, e.g.*, Fryson v. McDonough, No. 4:04cv455-

MP/EMT, 2006 WL 3123457, at *8 (N.D. Fla. Oct. 31, 2006) (order by district judge

denying § 2254 petition and adopting report and recommendation that explained

petitioner failed to show deficient performance by counsel: "Even assuming that defense

counsel should have moved to dismiss the information, Petitioner cannot show

prejudice.  There is no reasonable possibility that counsel's motion to dismiss the

indictment would have changed the results of the proceeding.  Assuming that defense

counsel moved to dismiss the information at or before arraignment, pursuant to Fla. R.

Crim. P. 3.190(c), and that the court granted counsel's motion, the court would have

allowed the state the opportunity to correct and refile the information.  Once the state

refiled the information with the missing language, Petitioner would have faced the same

robbery charges, and there is no reasonable basis for believing the outcome would

have been different." (citations omitted)).  As counsel for the State indicated in argument

during the Rule 3.850 evidentiary hearing:

> Count number two, failure to object to aggravated battery with a deadly weapon or great bodily harm, lesser.  The argument is that there wasn't a statute number listed in the information.
>
> Your Honor, the information clearly states the elements for an aggravated battery, deadly weapon.  It is included in there for purposes of a lesser included offense, not the primary charge offense.  The requirement as to the primary charge [offense] and the statute numbers are in there are there to put the person on notice as to what it is that he is primarily charged with.  That was done.  The language was there.

Doc. 11 Ex. M at 97.  Counsel is not ineffective for failing to raise or preserve a meritless issue.  *See, e.g.*, Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

Moreover, as indicated in defense counsel's testimony, quoted above in the analysis of Ground 2, part of the defense strategy was to give the jury the alternative of aggravated battery, a less serious offense than the charged offense of attempted first degree murder, by arguing "[i]f he hit her with a bat like she described he hit her with a bat, she would have far more injuries to her than what it is that she ultimately had." Doc. 11 Ex. M at 63.  This strategy proved effective, as the jury convicted Dishman of the lesser included offense of aggravated battery with a deadly weapon, rather than attempted first degree murder as charged.  Doc. 11 Ex. A at 75-78, Ex. C at 231-33.

Dishman has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

**Ground 6: IAC – Failure to File Motion to Reduce Charges**

In his sixth ground, Dishman asserts counsel provided ineffective assistance by not filing a motion to reduce the charges against him.  Doc. 19 at 17.  Again, Dishman does not allege supporting facts.  *Id.*

As Respondent indicates, Dishman raised this as the fifth ground in his Rule 3.850 motion.  Doc. 11 Ex. M at 19-22; *see* Doc. 20 at 23.  There, as supporting facts, Dishman alleged the following:

> The Defendant in this case was charged by information with Attempted first degree murder, False Imprisonment, Grand Theft Auto, and Criminal Mischief.  The evidence in the charge of Attempted First Degree Murder in this case is insufficient as a matter of law.  Thus, this failure violated the Defendant's 14th Amendment of the United States Constitution . . . .

Doc. 11 Ex. M at 19.

To the extent Dishman challenges, in this ground, his trial attorney's failure to file a motion challenging the information, this argument was addressed in the analysis of Ground 5, *supra*, regarding the filing of a motion under Florida Rule of Criminal Procedure 3.190(c)(4).  To the extent Dishman argues the evidence in the case did not support a charge of attempted first degree murder, the argument lacks merit.  Moreover, as also explained above, the jury did not find Dishman guilty of that charge; rather, the jury found him guilty of the lesser offense of aggravated battery with a deadly weapon.

Dishman has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 7: Fundamental Error – Information Fails to Name Petitioner

In his final ground, the only ground added when he filed the amended § 2254

petition, Dishman argues his "conviction constitutes fundamental error because the

information filed by the State fails to name Defendant/Petitioner, William R. Dishman, in

count one - attempted first degree murder, count two - false imprisonment, count three -

grand theft of motor vehicle, count four - criminal mischief," and "[t]hus, Petitioner was

never charged."  Doc. 19 at 20.  Respondent asserts that, on its face, this ground does

not relate back to any of the original six grounds and is time-barred.  Doc. 20 at 25.

Regardless, as indicated above, the record contains copies of the amended

information.  Doc. 11 Ex. A at 1 (information), 2 (amended information).  The document

identifies the Petitioner, William R. Dishman, as the Defendant in the case and includes,

in the caption, the Petitioner's name, race and gender, date of birth, and Social Security

number.  *Id.* at 2.  As quoted in the analysis of Ground 5, *supra*, the amended

information charges "the above-named defendant" with four counts.  *Id.*  The document

thus identified Dishman as the defendant, set forth the charged crimes and essential

facts, cited the statutes he allegedly violated, and was not "so vague, indistinct, and

indefinite as to mislead the accused and embarrass him . . . in the preparation of a

defense or expose the accused after conviction or acquittal to substantial danger of a

new prosecution for the same offense."  Fla. R. Crim. P. 3.140(o); *see* <u>Carbajal v. State</u>,

75 So. 3d 258, 262-63 (Fla. 2011) (citing Rule 3.140(o) and explaining that "while a

charging instrument is essential to invoke the circuit court's subject matter jurisdiction, 'defects in charging documents are not always fundamental where the omitted matter is not essential, where the actual notice provided is sufficient, and were all the elements of the crime in question are proved at trial'" (quoting State v. Gray, 435 So. 2d 816, 818 (Fla. 1983))).

Moreover, to the extent Petitioner asserts the state court erred in any decision concerning the Florida rule, "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see Estelle, 502 U.S. at 67-68 (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales, 699 F.2d at 1055; accord, e.g., McCullough, 967 F.2d at 535. See also, e.g., Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989) ("The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. That is not the case presented here. An examination of the indictment . . . shows that it incorporated the elements of the offense of armed robbery, named the complaining witness and sufficiently described the circumstances of the alleged robbery. The indictment was not fatally defective, for it adequately informed Heath of the charge he was called upon to defend, and the state trial court was not deprived of jurisdiction.").

Based on the foregoing, Dishman has not shown any state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an

unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Dishman is not entitled to federal habeas relief, and this ground should be denied.

## Conclusion

Based on the foregoing, Petitioner William R. Dishman is not entitled to federal habeas relief.  The amended § 2254 petition (Doc. 19) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Dishman's amended § 2254 petition (Doc. 19).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on April 20, 2015.


S/  Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**